IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SUMMER A. HORNBAKER                                                        PLAINTIFF

v.                          NO. 1:18-cv-00059 PSH

NANCY A. BERRYHILL, Acting Commissioner                                    DEFENDANT
of the Social Security Administration


MEMORANDUM OPINION AND ORDER

Plaintiff Summer A. Hornbaker ("Hornbaker") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ").

Hornbaker maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Hornbaker so maintains because her residual functional capacity was erroneously assessed.[2] Because it is not clear how the ALJ could weigh the medical opinions as he did in making the assessment, a remand is warranted.

---

[1]   The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

[2]   Specifically, Hornbaker maintains that the assessment is inconsistent with the objective medical evidence, inconsistent with the opinions offered by the ALJ's own consultative examiner, fails to properly account for Hornbaker's experience of pain, and fails to properly consider her entire medical condition.

Hornbaker alleged in her applications for disability insurance benefits, supplemental security income payments, and disabled widow's benefits that she became disabled in January of 2014. She alleged that she became disabled, in part, because of back pain and chronic obstructive pulmonary disease ("COPD").

The record reflects that in April of 2013, Dr. Mark Tait, MD, ("Tait") performed a consultative examination of Hornbaker. See Transcript at 542-544. He diagnosed her with low back pain with mild to moderate degenerative joint disease in the lumbar portion of her spine.

On June 23, 2015, Dr. Shannon Brownfield, MD, ("Brownfield") performed a consultative examination of Hornbaker. See Transcript at 668-672. Although his penmanship is difficult to decipher, he appears to have found that she had a full range of motion in her joints and cervical spine. Her range of motion in her lumbar spine, though, was limited to approximately seventy-five percent with pain. Hornbaker walked with a stooped gait, but she could walk without an assistive device and could walk on her heels and toes. Brownfield diagnosed, inter alia, moderate low back pain with degenerative disc disease and moderate COPD. He opined that she had moderate to severe limitations in lifting, stooping, and maintaining prolonged positions, and moderate to severe limitations in exertion.

On November 5, 2016, Hornbaker sought emergency room care at the Fulton County Hospital for complaints of pain in her head, neck, and shoulders. See Transcript at 735-753. Testing was performed, and the following diagnosis was made: "[m]ultilevel moderate to severe cervical degenerative change predominately involving C5-C6 and C6-C7 with neural foraminal stenosis as above." See Transcript at 745-746.

An MRI of Hornback's cervical spine was performed on November 29, 2016. The physician who interpreted the results found, in part, the following: "[m]ultilevel degenerative changes of the spine …, most significant at the C4-C5, C5-C6, and C6-C7 levels with areas of moderate to severe spinal canal stenosis with some associated flattening and compression of the cervical spinal cord," and "[a]dditional areas of neural foraminal stenosis …" See Transcript at 808.

Hornbaker was thereafter seen by Dr. Steven Cathey, MD, ("Cathey") for a neurosurgical consultation. Cathey examined Hornback and offered the following assessment in a letter dated December 6, 2016:

> … As you recall, [Hornbaker] is filing for long-term disability benefits through Social Security for chronic mechanical neck pain with associated paresthesia in both upper extremities. Physical therapy actually exacerbated the problem. Her pain is poorly controlled by medication, specifically tramadol.
>
> …
>
> A recent MRI of her cervical spine reports multilevel degenerative changes. Unfortunately, [she] did not bring the films with her so I have not had an opportunity to review them firsthand.
>
> … I would certainly like to review her MRI scan firsthand before making additional recommendations. … Based on today's exam, I suspect she is disabled with regard to future gainful employment. …

See Transcript at 772.

Cathey thereafter obtained the MRI of Hornbaker's cervical spine. He reviewed the results and offered the following assessment in a letter dated December 19, 2016:

> … Hornbaker's MRI scan of her cervical spine arrived today in the office for review. While she does have a degree of multilevel canal stenosis, there is no significant cord compression, signal changes, etc.

3

> ... [U]nfortunately, I do not believe [she] will benefit from cervical disc surgery or other neurosurgical intervention. ... As you recall, physical therapy actually aggravated the problem.

See Transcript at 771.

An assessment of Hornbaker's physical residual functional capacity was made by two state agency physicians, Dr. Martha Lauster, MD, ("Lauster"), and Dr. William Harrison, MD, ("Harrison"). See Transcript at 107-112, 121-126, 134-139, 151-159, 167-173, 183-189. Lauster and Harrison agreed that Hornbaker is capable of performing work at the light exertional level, except that Hornbaker can only occasionally climb, balance, stoop, kneel, crouch, and crawl.

The ALJ found at step two of the sequential evaluation process that Hornbaker's severe impairments include degenerative disc disease and COPD. The ALJ assessed Hornbaker's residual functional capacity and found that she can perform light work but is only able to "occasionally climb ramps, stairs, ladders, ropes or scaffolds, balance, stoop, kneel, crouch and crawl; ..." See Transcript at 16.[3] In so finding, the ALJ gave great weight to Tait's opinions, though the ALJ acknowledged that they were offered before the alleged onset date. The ALJ also gave great weight to Lauster and Harrison's opinions. With respect to Brownfield's opinion, the ALJ found the following:

> ... Although [Brownfield's] opinion[s] fail to address specific work related limitations, [the opinions are] given great weight because the examination results are consistent with the ability to perform a reduced range of light work. The examination showed [Hornbaker's] lumbar range of motion was mildly diminished but straight leg raises were negative and there was no muscle weakness.

---

[3] The ALJ found that Hornbaker has limitations caused by environmental irritants and mental impairments, and he incorporated the limitations caused by those impairments into the assessment of her residual functional capacity. See Transcript at 16. She does not challenge the manner in which he did so.

4

See Transcript at 20. The ALJ accorded no weight to Cathey's opinions, giving the following reasons for doing so:

> … Although … Cathey had a treating relationship with [Hornbaker], it is not known whether he is familiar with [the] definition of disability contained in the Social Security Act and regulations. His opinion [Hornbaker] is disabled is an issue reserved for the Commissioner and is therefore given no weight. Additionally, [Cathey's] opinion is speculative because he did not review the imaging results. His subsequent letter does not support a finding of disability because after reviewing [Hornbaker's] MRI results, he noted there was no significant cord compression and she was not a surgical candidate.

See Transcript at 21. At step four, the ALJ found that Hornbaker is capable of performing her past relevant work as an inspector.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most a person can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). In making the assessment, the ALJ is required to consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). Any opinion may be discounted if other medical assessments are supported by better or more thorough medical evidence or where the physician renders inconsistent opinions that undermine the credibility of the opinion. See Michel v. Colvin, 640 Fed.Appx. 585 (8th Cir. 2016) (treating physician's opinions).

The ALJ found that Hornbaker's limitations do not prevent her from performing a reduced range of light work. In so finding, the ALJ accorded great weight to the opinions of Tait, Lauster and Harrison, and Brownfield and gave no weight to Cathey's opinions. Because it is not clear how the ALJ could weigh the opinions as he did, a remand is warranted for the reasons that follow.

5

First, the ALJ gave great weight to Tait's opinions because they were "consistent with [Tait's] unremarkable examination results," see Transcript at 20, although the ALJ noted that Tait offered his opinions before the alleged onset date. It is not clear how the ALJ could accord Tait's opinions any meaningful weight when they were indeed offered well before the alleged onset date. Tait offered his opinions in April of 2013, but Hornbaker alleged that she did not become disabled until January of 2014. Medical opinions offered approximately nine months before the claimant's alleged onset date undoubtedly have some historical value. It is not clear, though, what relevance such opinions have in determining the extent to which the claimant's limitations impact the most she can do as of the alleged onset date.

Second, the ALJ gave great weight to the opinions offered by Lauster and Harrison, both of whom opined that Hornbaker is capable of performing a reduced range of light work. Although their opinions are entitled to some weight, the Court is not persuaded that the opinions are entitled to the great weight accorded them by the ALJ. See Vossen v. Astrue, 612 F.3d 1011 (8th Cir. 2010) (opinions of non-treating, non-examining physician do not normally constitute substantial evidence on the record as a whole). Lauster and Harrison never examined Hornbaker, and their opinions appear to be inconsistent with Brownfield's opinions, opinions the ALJ also accorded great weight.

Third, the ALJ gave great weight to Brownfield's opinions, noting that they were consistent with Hornbaker's ability to perform a reduced range of light work. The ALJ's treatment of Brownfield's opinions is problematic. Although Brownfield found that Hornbaker had a full range of motion in her joints and cervical spine, he also opined that she had moderate to severe limitations in lifting, stooping, maintaining prolonged

positions, and exertion. It is difficult to reconcile the fact that the ALJ accorded Brownfield's opinions great weight—opinions that included his belief that Hornbaker had a moderate to severe limitations in lifting, stooping, maintaining prolonged positions, and exertion—but nevertheless found that Hornbaker can perform a reduced range of light work.

Fourth, the ALJ gave no weight to Cathey's opinions. The ALJ did so for the following three reasons: Cathey's opinions encroached upon an issue reserved for the Commissioner; the opinions were not based upon Cathey's review of Hornbaker's MRI; and, after reviewing the results of the MRI, Cathey observed that there was no significant cord compression and Hornbaker was not a surgical candidate. Had Cathey not authored the December 19, 2016, letter, the reasons the ALJ gave for discounting Cathey's opinions would be supported by substantial evidence on the record as a whole and good reasons for discounting his opinions. In Cathey's second letter, though, one dated December 19, 2016, he made no representation as to whether Hornbaker was disabled as to future employment and noted that he reviewed the results of her MRI before offering his subsequent opinions. The ALJ appears to have credited Cathey's findings that Hornbaker had no significant cord compression and was not a surgical candidate but appears to have ignored Cathey's finding that she had "a degree of multilevel canal stenosis." The ALJ failed to explain why he weighed the aforementioned findings as he did.

In short, it is not clear how the ALJ could weigh the medical opinions as he did in assessing Hornbaker's residual functional capacity. Substantial evidence on the record as a whole does not support the ALJ's findings, and a remand is therefore

7

necessary. Upon remand, the ALJ shall more thoroughly explain his reasons for weighing the medical opinions as he did and, if necessary, send Hornbaker for a consultative physical examination.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991). Judgment will be entered for Hornbaker.

IT IS SO ORDERED this 8th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE